UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHARROD MOTEN,

                Plaintiff,

      v.

P. HORN, et al.,

                Defendants.

Case No. 1:25-cv-01107-JLT-EPG

FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S CLAIM OF FAILURE TO PROTECT AGAINST DEFENDANT ALAFA

(ECF No. 14)

FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION BE DENIED

(ECF NO. 14)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS

Plaintiff Sharrod Moten proceeds *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] (ECF No. 1). In his first amended complaint, Plaintiff sues Defendant P. Horn, Warden at Kern Valley State Prison ("KVSP"), and Defendant Alafa, correctional Captain at KVSP. Plaintiff alleges that Alafa provoked inmates to assault Plaintiff and that Horn warden failed to take action against Alafa or to prevent the assault. (ECF No. 14).

After reviewing the amended complaint, the Court recommends permitting Plaintiff to

---

[1] Plaintiff paid the filing fee and is not proceeding *in forma pauperis* in this case. (*See* September 2, 2025, docket entry).

1

proceed only on his failure to protect claim against Defendant Alafa.

The Court also recommends denying Plaintiff's request for a preliminary injunction.

## I.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or part of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.   FIRST SCREENING ORDER

Plaintiff filed the original complaint in this case on September 2, 2025. (ECF No. 1). The complaint was 55 pages long, asserted 19 claims and named nine defendants, including Horn and Alafa. Plaintiff asserted various claims in his complaint, including retaliation, deliberate indifference to serious medical needs, defamation, failure to protect, "state-sponsored threats, and retaliatory assault," deprivation of property and unlawful extension of punishment, coordinated

2

harassment, manipulation of inmate trust account, interference with access to the courts, falsification of medical records, issuance of rules violation reports without due process, sexually assaultive searches, sexual abuse, racial discrimination, retaliatory lockdowns, mail interference, conspiracy, violation of the ADA and Section 504 of the Rehabilitation Act, and various state law claims. (*Id.* at 11-51). These claims concerned several different events and interactions at KVSP between March 25, 2025, and August 28, 2025, with some claims reaching back to 2021 and 2022. (*Id.*).

The Court screened Plaintiff's initial complaint and determined that it failed to state a cognizable claim and failed to comply with Federal Rules of Civil Procedure 8, 18 and 20. (ECF No. 13 at 7).

### III.   SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT[2]

Plaintiff filed his first amended complaint on February 9, 2026. (ECF No. 14). He states that the events described occurred at KVSP and names Warden Horn and Captain Alafa as defendants. Plaintiff's first amended complaint generally alleges that Defendants failed to protect him from inmate violence out of retaliation for filing grievances against correctional officers in violation of Plaintiff's First and Eighth Amendment rights.[3]

Plaintiff alleges that, on March 9 or 10, 2025, KVSP implemented a lockdown affecting Facility A, including Plaintiff's housing in Building 4. (*Id.* at 2). During the lockdown, "inmates in Facility A were subjected to blanket restrictions that substantially reduced out-of-cell time and access to normal programs." (*Id.* at 3). On March 25, 2025, Facility A, Building 4, was placed on "threat assessment" status, and inmates "experienced widespread restrictions including denial or suspension of normal physical activities, dayroom access, visitation, religious services, and mandated yard/recreation." (*Id.*).

The next day, while three inmates were escorted to holding cases inside the Facility A Program Office, Defendant Captain Alafa ordered staff present to leave the area. (*Id.*). "After

---

[2] For readability, the Court has made minor alterations to some of Plaintiff's quotations—such as correcting misspellings and altering punctuation—without indicating each change.

[3] In his first amended complaint, Plaintiff appears to restate his factual allegations and legal claims in two formats. (*Compare* ECF No. 14 at 1-14 and ECF No. 14 at 15-22). Pages 23-50 of Plaintiff's first amended complaint appear to be requests for documents directed to a state court and related to Plaintiff's state court cases.

clearing staff from the area, Captain Alafa told the inmates in the holding cages that Plaintiff was responsible for their placement in administrative segregation and for their removal from the yard on March 26, 2025." (*Id.*). Alafa's statement "was false and was intended to redirect inmate anger toward Plaintiff and to increase hostility toward Plaintiff." (*Id.*). Alafa acted with deliberate indifference to Plaintiff's safety and "exposed Plaintiff to a substantial risk of serious harm, including inmate violence…." (*Id.* at 4).

The same day, March 26, 2025, Alafa approached another inmate housed in Building 4, Section B and "stated that Plaintiff had submitted a 'kite' against the three inmates who were taken to administrative segregation" and "labeled Plaintiff a 'snitch.'" (*Id.*). "The 'snitch' label is widely understood in prison to place an inmate at heightened risk of assault." (*Id.*). Alafa knew of "documented rival tensions and Plaintiff's prior conflicts with at least one inmate, and he made the statement knowing it would likely provoke hostility and violence against Plaintiff." (*Id.*). "Alafa's conduct was retaliatory and motivated by Plaintiff's protected activity, including filing grievances and pursuing litigation against CDCR [California Department of Corrections and Rehabilitation] staff and officials." (*Id.*).

On March 28, 2025, Alafa approached Plaintiff's cell "claiming he was conducting an 'interview' regarding a 602 grievance Plaintiff filed" against another officer. (*Id.* at 5). Because Alafa "brought no paperwork, requested no statement, took no notes, and conducted no legitimate inquiry," Plaintiff believes this interview was a pretext intended to provoke Plaintiff and "reinforce Alafa's prior false narrative that Plaintiff caused other inmates to be sent to administrative segregation." (*Id.*).

Later that day, as a "foreseeable result of Captain Alafa's earlier false statements blaming Plaintiff for the placement of three inmates into administrative segregation and labeling Plaintiff a snitch," a "large group of inmates converged around Plaintiff on the yard…in a manner that created an immediate and substantial risk of violence." (*Id.*). Alafa's actions were "intended to isolate Plaintiff and expose Plaintiff to inmate retaliation" creating a "substantial risk of serious harm and a risk of escalation into a use-of-force incident." (*Id.* at 6).

\\\

On March 31, 2025, Plaintiff submitted CDCR grievance log no. 25000545 regarding Alafa's March 26-28, 2025, conduct. (*Id.*). In his grievance, "Plaintiff expressly requested that Warden P. Horn be notified about the danger created by staff labeling Plaintiff a 'snitch' and blaming Plaintiff for other inmates' punishment." (*Id.*). "Supervisory officials, including Warden P. Horn, knew of Captain Alafa's pattern of 'snitch labeling,' provocation, and endangerment, and failed to take reasonable measures to stop it, discipline it, or protect Plaintiff from the resulting danger." (*Id.*).

On April 3, 2025, Plaintiff discovered an indigent envelope sent out in the institutional mail with his surname on it and later returned to KVSP. (*Id.* at 6-7). However, "Plaintiff did not author, prepare, or send the envelope, and Plaintiff did not request indigent postage or mailing for that destination." (*Id.* at 6). Plaintiff states that the "envelope was introduced into the institutional mail process to falsely associate Plaintiff with 'safety concerns' or a security issue and to create a paper trail that could be used as a pretext for adverse administrative action against Plaintiff, including removal, transfer, or heightened restrictions." (*Id.* at 7). "The timing and nature of the envelope incident, occurring shortly after Plaintiff's complaints about Alafa and after the March 28, 2025, yard convergence incident, support an inference that it was connected to the same retaliatory course of conduct directed at Plaintiff for engaging in protected grievance activity and litigation." (*Id.*).

On April 15, 2025, custody staff delivered to Plaintiff "an envelope containing a written threat stating, in substance, that 'Inmate Moten will be killed if inmate Moten goes to the yard.'" (*Id.*). The envelope was processed through "institutional channels and was delivered to Plaintiff by custody staff." (*Id.*).

On April 25, 2025, Plaintiff was assaulted by two inmates during the morning medical line on the yard. "These events occurred after Defendant Captain Alafa's March 26-28, 2025, false accusations and 'snitch' labeling, which exposed Plaintiff to a known and substantial risk of inmate retaliation and violence." (*Id.* at 8). "Despite the known danger created by 'snitch' labeling and the subsequent written threat, Plaintiff was not provided reasonable protective measures sufficient to mitigate the foreseeable risk of assault." (*Id.*).

Given these allegations, Plaintiff asserts a claim for failure to protect against Alafa and Horn (Claim I), a claim for retaliation against Alafa (Claim II), and a claim for supervisory deliberate indifference against Horn (Claim III). (*Id.* at 8-10). As a result, Plaintiff alleges that he was physically and psychologically injured from the inmate assault and "continues to face hostility and potential violence from other inmates." (*Id.* at 20). Plaintiff seeks compensatory and punitive damages, along with "preliminary and permanent injunctive relief including non-retaliation orders [and] evidence preservation (BWC, fixed cams, logs, RVR packets, SOMS, records)." (*Id.* at 10).

## IV.    ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler*

*II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.      Failure to Protect

Plaintiff's first claim is for "failure to protect/deliberate indifference" against Defendants Alafa and Horn.  (ECF No. 14, at p. 8).

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Id.* at 837. "'Deliberate indifference' has both subjective and objective components*." Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer,* 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad,* 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

The Ninth Circuit has held that prison officers telling inmates that someone is a "snitch" with the intent of having an inmate killed by other inmates could constitute a violation of the inmate's right to be protected from violence while in custody. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (upholding a failure to protect claim where Plaintiff "alleged that because he had petitioned prison and government officials for redress of his grievances, [Defendants] had conspired to label him a 'snitch' and thereby subject him to retaliation by inmates").

Here, Plaintiff alleges that Defendant labeled Plaintiff a "snitch" by telling inmates that Plaintiff was responsible for their removal from the yard and placement in administrative segregation. Plaintiff alleges that Alafa intentionally provoked inmates to commit violence against Plaintiff, and Plaintiff was later assaulted by two inmates.

The Court recommends finding that Plaintiff has pled sufficient facts to proceed past screening on his claim of failure to protect in violation of the Eighth Amendment against Defendant Alafa.

However, the Court recommends finding that Plaintiff fails to state a claim for failure to protect against Defendant Horn.  Plaintiff does not allege that Defendant Horn was involved in Defendant Alafa's actions or otherwise encouraged an inmate assault.  And, as discussed further below, the Court recommends finding that Defendant Horn is not liable for those actions based solely on being Defendant Alafa's supervisor.

### C.      Retaliation

Plaintiff's next claim is for "First Amendment—Retaliation" against Defendant Alafa.

Plaintiff's retaliation claim falls within the framework of the First Amendment. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (noting that claim of false charge infringing on prisoner's right to file prison grievances properly fell under the First Amendment's retaliation framework). Regarding such claims, the Ninth Circuit has held:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original). "Evidence of his motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual." *Barth v. Montejo*, No. 2:19-CV-1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes,* 408 F.3d at 567.

Here, Plaintiff states generally that Defendant Alafa's actions were done in retaliation for protected conduct "including filing grievances and pursuing litigation against CDCR staff and officials." (ECF No. 14 at 4) ("Alafa's conduct was retaliatory and motivated by Plaintiff's protected activity, including filing grievances and pursuing litigation against CDCR staff and officials."). However, these general allegations are not sufficient to show that Defendant Alafa acted out of retaliation for Plaintiff filing grievances or otherwise exercising his First Amendment rights. Plaintiff does not allege that Defendant Alafa said anything that connected his actions to Plaintiff's grievances or litigation conduct, or that Defendant Alafa commented on Plaintiff's grievance or litigation conduct at all. Plaintiff's allegations that Defendant Alafa made statements

9

to inmates while Plaintiff was engaged in litigation is not sufficient to demonstrate that Defendant Alafa acted in retaliation for Plaintiff engaging in constitutionally protected activity.

Accordingly, the Court recommends finding that Plaintiff fails to state a claim for retaliation in violation of the First Amendment.

### D.    Supervisory Liability

Plaintiff's third claim is for "Eighth Amendment—Supervisory Deliberate Indifference," against Defendant Horn.  (ECF No. 14, at p. 9).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).  To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Under these legal standards, Defendant Horn is not liable based on his role as supervisor. Plaintiff has not alleged that Defendant Horn was directly involved in Defendant Alafa's actions. Moreover, Plaintiff does not allege that Defendant Horn acted with deliberate indifference by having actual knowledge of the risk of harm and failing to take reasonable measures to abate that risk. While Plaintiff alleges that he "requested that Warden P. Horn be notified about the danger created by staff labeling Plaintiff a 'snitch' and blaming Plaintiff for other inmates' punishment," this does not establish a constitutional violation.  Plaintiff does not allege that Defendant Horn had knowledge of the actual risk of harm before Defendant Alafa undertook his actions, or failed to take reasonable measures to abate any such risk.

Thus, the Court recommends finding that Plaintiff's first amended complaint fails to state a claim for supervisory liability.

## V.     REQUEST FOR INJUNCTIVE RELIEF

In his first amended complaint, Plaintiff requests preliminary and permanent injunctive relief, seeking "non-retaliation orders" and "evidence preservation (BWC, fixed cams, logs, RVR packets, SOMS, records)." (ECF No. 14 at 10).

### A.    Legal Standards

To obtain injunctive relief, a party must satisfy either the "traditional" or "alternative" standard for injunctive relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). "A cause of action must exist before injunctive relief may be granted." *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1182 (E.D. Cal. 2010) (internal quotation marks & citations omitted). "Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action." *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (internal quotation marks & citations omitted).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Plaintiff must do more than simply *allege* imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). In addition to establishing irreparable harm, the injunctive relief sought must be related to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). A permanent injunction may be granted only after a final hearing on the merits. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.1993) ("As a general rule, a permanent injunction will be granted when liability has been established ....").

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000) (the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and

courts may not grant "relief that binds prison administrators to do more than the constitutional minimum").

### B.     Analysis

The Court recommends denying Plaintiff's request for a preliminary injunction.

First, because Plaintiff's case is still in its preliminary screening stage, service of process has not been perfected on Defendants, and they have no actual notice of this litigation. Therefore, the Court has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(d)(2); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  Moreover, it appears that some of these orders, such as orders regarding evidence preservation, would not be directed to the defendants at all, but would be directed toward prison staff.

Second, Plaintiff fails to meet the high burden of proving that he is entitled to a preliminary injunction. Plaintiff's request for "non-retaliation orders" is not specific or narrowly drawn. Plaintiff does not identify the specific type of retaliatory conduct he seeks to enjoin, and does not identify the individuals who would be subject to the order. Plaintiff also does not allege that he is likely to suffer irreparable harm in the absence of an injunction. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014) (conclusory or speculative allegations of harm insufficient to establish a likelihood of irreparable harm).

Next, Plaintiff seeks an order from this Court to an unidentified party to preserve documents and materials that Plaintiff considers to be "evidence" in this litigation. Plaintiff's request for BWC (presumably, body worn camera) footage, fixed cameras, "logs," RVR packets, SOMS [presumably strategic offender management system], and "records" is not narrowly drawn. Plaintiff again fails to argue that he will suffer irreparable harm without an injunction. He has not provided specific facts to support a credible threat of immediate and irreparable harm to any evidence such that he would be entitled to injunctive relief.  Moreover, as mentioned above, this request appears directed at prison officials who maintain information and records, rather than toward to defendants themselves.

Moreover, the Court cannot find at this time that Plaintiff is likely to succeed on the merits.  Finally, Plaintiff has not demonstrated that the balance of equities tips in his favor, or that

13

an injunction is in the public interest.

Accordingly, the Court recommends finding that Plaintiff has not met his high burden of proving that he is entitled to a preliminary injunction on his requests for non-retaliation orders and preservation of evidence.

## VI.   CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's first amended complaint and recommends finding that it states only the following claim: failure to protect in violation of the Eighth Amendment against Defendant Alafa. The Court will recommend that all other claims and Defendants be dismissed without further leave to amend.

The Court further recommends that Plaintiff's request for a preliminary injunction be denied.

Accordingly, IT IS RECOMMENDED as follows:

1.  This case proceed on Plaintiff's First Amended Complaint on the following claim: failure to protect in violation of the Eighth Amendment against Defendant Alafa.

2.  All other claims and Defendants be dismissed without further leave to amend.

3.  Plaintiff's request for a preliminary injunction be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __**April 13, 2026**__                 __/s/ Erica P. Groj__

UNITED STATES MAGISTRATE JUDGE

14